1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TOM CHRISTY STRONG, | ) | 1:12-cv-00264 GSA |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING JUDGMENT IN** |
| | ) | **FAVOR OF DEFENDANT** |
| v. | ) | **COMMISSIONER OF SOCIAL** |
| | ) | **SECURITY AND AGAINST PLAINTIFF** |
| CAROLYN W. COLVIN, Commissioner of | ) | **TOM STRONG** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## INTRODUCTION

Plaintiff Tom Christy Strong ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security[1] ("Commissioner" or "Defendant") denying his applications for

disability insurance benefits and Supplemental Security Income, pursuant to Titles II and XVI of

the Social Security Act respectively.  The matter was submitted to this Court on the parties'

briefs, without oral argument.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge.  (*See* Docs. 8 & 10).

1

The Court finds that the Commissioner's decision is based on proper legal standards and is supported by substantial evidence in the record as a whole.  The Commissioner's decision is therefore AFFIRMED.

## THE ADMINISTRATIVE PROCEEDINGS

In July 2008, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning January 24, 2008.  AR 120-127.[3]  Shortly thereafter, Plaintiff also filed an application for Supplemental Security Income under Title XVI of the Social Security Act, alleging disability beginning April 19, 2008.  AR 114-119.  Plaintiff's applications were denied initially and upon reconsideration, leading him to request a hearing before an Administrative Law Judge ("ALJ").  AR 48-51; 57-61; 63-67.  On September 3, 2010, the Honorable Dave Garwal, ALJ, held a hearing on Plaintiff's claims.  AR 30-47.  On September 24, 2010, ALJ Garwal issued a decision finding Plaintiff was not disabled from January 24, 2008 through the date of the decision, and denying his claims for benefits.  AR 15-24.  On December 1, 2011, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the Commissioner's final decision.  AR 5-11. Plaintiff then commenced the instant civil action, seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

### 1.    The September 3, 2010 Hearing

A video hearing in this matter was held before ALJ Garwal.  ALJ Garwal presided over the hearing from Santa Barbara, California.  Plaintiff, assisted by a non-attorney representative, Diana Wade, appeared in San Luis Obispo, California.  Vocational Expert ("VE") Ann T. Wallace also appeared at the hearing.  AR 15.

### (a)    *Plaintiff's Testimony*

At the time of the hearing, Plaintiff lived in Shandon, California, with his wife, fifteen-

---

[3]References to the Administrative Record of the proceedings before the Administrative Law Judge are designated as "AR," followed by the appropriate page number.

year-old son and four-year-old daughter.  AR 33, 37-38.  He is a high-school graduate.  AR 34.

He is able to drive.  AR 34.  From 1992 to 2008, Plaintiff worked as a truck driver and furniture

mover.  AR 34.  However, Plaintiff had not worked since June 2008 because of neck and lower

back pain, that radiated down his right leg and out through his toes.  AR 34-35.

Based upon his doctors' advice, Plaintiff has not had remedial surgery, but has had

epidural injections in his neck and back for temporary relief.  AR 35.  In addition, Plaintiff

sought help from a chiropractor and at the San Luis Obispo Sports Therapy Clinic, where his

therapy entailed stretches and other exercises to strengthen his lower back.  AR 36.  Doctors have

also prescribed electrical stimulation therapy, but Plaintiff has not received this therapy as it is

not covered by his medical insurance, and he cannot independently afford it.  AR 35.

Plaintiff is in severe pain continuously, but obtains temporary relief through medications,

primarily Norco.  AR 37.  Plaintiff mostly stays at home, watching television, doing light

housework, and caring for his young daughter to a limited extent.  AR 37.  He uses a recliner to

watch television so that he can keep his legs elevated.  AR 42.  He can sit comfortably for about

twenty or thirty minutes without having to change positions, and can stand for a maximum of

thirty minutes at a time.  AR 40-41.  He can walk about two blocks in seven or eight minutes, but

uses a cane as his legs randomly "give out," making him likely to fall.  AR 41-42.  Plaintiff does

not kneel anymore as it is "too uncomfortable," and he has difficulty getting up from a kneeling

position.  AR 42.  He can "bend some," but "[i]t's uncomfortable."  AR 42.  He can lift about ten

pounds safely.  AR 43.

Plaintiff's former employer re-assigned him to lighter, warehouse duties in an effort to

accommodate his physical challenges.  However, this work also "required lifting and moving

things around," and Plaintiff was unable to continue with it.  AR 40.

**(b)**     ***The Vocational Expert's Testimony***

Vocational Expert Ann Wallace testified that pursuant to the Dictionary of Occupational

Titles ("DOT"), § 904-363.010, Plaintiff's past work as a furniture mover and driver was

3

considered heavy work.  AR 44.  Plaintiff's past work was semi-skilled, with a Specific

Vocational Preparation ("SVP") number of four.  AR 44.

The ALJ asked the VE to reflect on the work potential of a hypothetical person of

Plaintiff's age, with his education and work experience, who can lift five pounds, up to ten

occasionally, who can stand for two to eight hours and sit for six to eight hours, occasionally

bend or stoop, but who cannot work in a hazardous environment or work with dangerous

equipment or machinery.  AR 44-45.  The VE testified that this person could work as a parking

lot cashier, a "sedentary" job as described in the Dictionary of Occupational Titles, § 915-

473.010.  She noted that 8,800 such jobs exist regionally, and 63,000 exist nationally.  AR 45.

She added that this hypothetical person could also work as a watch guard, at, for example, the

entrance of a country club or a condominium complex, as described in the DOT § 372-667.030.

AR 45.  Ms. Wallace testified that 7,000 such jobs exist regionally, and 78,000 exist nationally.

AR 45.  With an SVP number of three, these jobs are considered semi-skilled and, as such,

would be consistent with Plaintiff's background.  Further, while the DOT defines these jobs as

"light," they can be performed as "sedentary" based on actual job analyses.  AR 45.

### 2.    The Medical Record

The entire medical record was reviewed by the Court.  AR 209-562.  An overview of the

medical evidence is provided here.  Other medical record evidence applicable to this Court's

decision will be separately referenced as required.

Plaintiff's back problems began after he fell down a flight of stairs while moving his

possessions during snowy weather in Ohio.  AR 269, 415.  His medical records indicate that he

first sought medical treatment for severe back pain in 2004, while he was still employed as a

furniture mover and well before he applied for disability benefits in 2008.  AR 210-232.

Plaintiff's main treating physicians include Dr. Nelson Yamagata (2004); Dr. Miriam Lomelino,

Plaintiff's primary physician (2004 onwards); Dr. Douglas Cannon (2005); Dr. Yuen So (2005);

Dr. Ian Carroll (2006-2007); and Dr. Timothy Kuang (2007-2010).  Dr. Kuang completed a

1   Physical Residual Functional Capacity Questionnaire ("RFC Questionnaire") for Plaintiff on

2   August 31, 2010, a few days before Plaintiff's hearing before the ALJ.  AR 558-562.

3         Plaintiff was also examined and evaluated by a consultative examiner, Dr. Dean Chiang,

4   on October 26, 2008.  AR 269-272.  In addition, a California Department of Social Services,

5   Disability Determination Services medical consultant, Dr. P. Kammen ("state agency medical

6   consultant"), reviewed Plaintiff's medical records.  Dr. Kammen completed a Physical Residual

7   Functional Capacity Assessment ("RFC Assessment") and a Case Analysis, both dated

8   November 21, 2008.  AR 274-280.  Finally, a California Department of Social Services,

9   Disability Determination Services reviewing physician, Dr. Lavanya Bobba ("state agency

10   reviewing physician") reviewed Dr. Kammen's RFC Assessment and affirmed it on March 24,

11   2009  (AR 332-334).

12            **(a)**     ***Plaintiff's Treatment at Stanford by Dr. Ian Carroll and Colleagues***

13         Dr Ian Carroll first evaluated Plaintiff on October 17, 2006, after he was referred by Drs.

14   Todd and/or Miriam Lomelino for "low back pain and numbness."  AR 413.  Dr. Carroll

15   reviewed an MRI of Plaintiff's lumbar spine dated August 5, 2004 and a "repeat MRI dated

16   September 20, 2006."  AR 414.  With respect to the 2006 MRI, Dr. Carroll noted:

17   
18           There is impingement or compression of the exiting left L5 nerve root.  There is
        mild facet joint arthropathy, but no significant central canal stenosis . . .

19           So really clinically he presents as having a right S1 radiculopathy with a bulging
        L5-S1 disc, which apparently bulges more to the left.  Despite the fact that it is not

20           seen on his MRI, I feel it is almost certain that this disc in fact, the L5-S1 disc, is
        impinging on the right neural foramina or impinging on the transversing right S1

21           nerve root . . . It is the impingement on the exiting nerve root that likely is the
        result causing most of his symptoms.  The gold standard of treatment for this kind

22           of pain is to do an L5-S1 microdisectomy, which is a surgery, which he has
        already expressed he is not especially excited about trying, and to me the real

23           hesitation would be that it is hard to suggest to him to undergo surgery, especially
        in light of a job where he is continuing to lift really heavy things . . .

24           From a procedural standpoint there are some conservative things that might give
        him some significant relief.  It is hard to know how durable they would be, so he

25           might be benefitted by an epidural steroid injection.

26   AR 414, 416-417, 418.

27   

28                         5

On November 1, 2007, and January 24, 2007, Plaintiff underwent a caudal epidural steroid injection at the Stanford University Medical Center.  AR 410-411; 418-419.   Dr. Carroll recommended that Plaintiff find a practitioner closer to his residence to administer any additional epidural injections, since he lived 250 miles away from Stanford.  AR 418-419.

Plaintiff was next seen by Drs. Jane Ahn and Vanila M. Singh at Stanford on February 21, 2007.  AR 407.  In a report of that visit, Dr. Ahn notes that "[Mr. Strong] works as a furniture mover.  He is currently on disability and we certainly do recommend that he avoid working in this fashion as this could severely exacerbate both his neck pain and right upper extremity pain as well as his low back pain." AR 408.

Dr. Ahn's report further noted positive findings on Plaintiff's cervical MRI as well as pain in his neck radiating to his right upper extremity.  Additional cervical epidural steroid injections were recommended to temporize pain complaints.  AR 408.  Finally Dr. Ahn suggested that Plaintiff continue to remain on disability as his current jobs as a furniture mover and truck driver are not compatible with his pain, his symptoms and his MRI findings.  AR 409.

On March 14, 2007, Plaintiff returned to Stanford and underwent a cervical epidural steroid injection at the C6-7 level.  AR 399.  There are no further records regarding Plaintiff's treatment at Stanford.

### (b)   *Dr. Timothy Kuang's Treatment Records and RFC Assessment*

On May 8, 2007, Plaintiff presented to Dr. Timothy Kuang, a specialist in pain management and in physical medicine and rehabilitation, for an initial pain management treatment evaluation on account of his chronic lower back and neck pain.  AR 236.  Dr. Kuang diagnosed Plaintiff with lumbar radiculopathy; lumbar disc bulging at L4-5 and L5-S1; lumbar foraminal stenosis; cervical radiculopathy; and cervical degenerative disc disease at C4-5 and C5-6.  AR 238.  Dr. Kuang noted the chronic nature of the patient's disease and recommended conservative combination therapy including medication, an exercise program, and possible injections.  Dr. Kuang did not recommend surgical intervention at the time but would consider a

1   discogram for possible surgery if the conservative treatment failed.  AR 238-239.

2        Plaintiff continued treatment with Dr. Kuang and between May and December 2007, he

3   was prescribed Vicodin and Neurontin, and underwent several epidural injections to the neck and

4   back.  (AR 240; AR 245; AR 252).  After failing to obtain lasting relief, Plaintiff underwent a

5   discogram on November 14, 2007, which showed the source of his pain to most likely be the L5-

6   S1 disc.  AR 257-258, 260-263.  Based on the discogram findings, Dr. Kuang recommended

7   laser and intradiscal electrothermal therapy (IDET) treatment over "surgical fusion" because the

8   "patient's disc bulging herniation is not that big."  AR 260; AR 266.  Plaintiff did not receive the

9   proposed laser and IDET treatment because Medi-Cal declined coverage and Plaintiff could not

10  afford to pay independently.  AR 264, 266.

11       Plaintiff was next in treatment with Dr. Kuang in September 2008, after filing his July

12  2008 applications for disability benefits but shortly before his consultative examination with Dr.

13  Dean Chiang.  Dr. Kuang again noted that IDET and spinal cord stimulation procedures were

14  indicated because of Plaintiffs failure to respond to epidural injections.  Again, the recommended

15  procedures were precluded by the lack of adequate medical coverage.  AR 267.  Dr. Kuang noted

16  that "[t]he patient is not able to work but he said once his pain is under control he will return."

17  AR 267.  Plaintiff then underwent two lumbar epidural injections in December 2008.  AR 305-

18  306, 309-310.  Dr. Kuang also noted that Plaintiff had continued to receive Vicodin and

19  Neurontin through Dr. Lomelino.  AR 307.

20       Plaintiff continued treatment with Dr. Kuang throughout 2009 and 2010.  He continued to

21  try various medications with limited success.  AR 535.  In June 2009, Dr. Kuang requested

22  approval, from a new, private insurer, for spinal cord stimulator treatment on a trial basis to

23  determine whether a permanent stimulator implant was warranted; this request and a subsequent

24  appeal were denied by the new insurance provider.  AR 523, 541, 545.  On October 2, 2009, Dr.

25  Kuang started Plaintiff on a Fentanyl patch, noting that other medications had not been effective.

26  AR 527.  Plaintiff had to discontinue the Fentanyl patch two months later as he could not afford

27

28                            7

it.  Plaintiff also could not afford Lyrica, another medication Dr. Kuang had proposed.  AR 524,

527, 529.  Plaintiff did, however, obtain "50% pain relief" from a cervical epidural injection on

November 25, 2009.

Dr. Kuang's progress notes for virtually the entire course of treatment, from 2007-2010,

include identical functional rehabilitation and behavior modification recommendations from visit

to visit.  Regarding functional rehabilitation, Dr. Kuang recommended home physical therapy

targeting the neck and back (strengthening, stretching, conditioning and posture control exercise

program), using physical modalities, walking, and a stretching exercise program. Regarding

behavior modification, Dr. Kuang recommended that Plaintiff take frequent breaks and avoid

heavy lifting, repetitive movements of the cervical spine [neck] and lumbosacral spine [back],

and axial loading activities.  *See, e.g.,* progress notes from November 20, 2007, AR 260;

September 23, 2008, AR 268; October 2, 2009, AR 528; and August 20, 2010, AR 515-516).

On August 20, 2010, Plaintiff presented to Dr. Kuang for a functional capacity

evaluation.  Dr. Kuang's records of his visit state that the patient has constant, severe back pain,

with medication barely controlling the pain and that he is unable to pursue treatment because of

financial hardships.  However, Dr. Kuang further noted that the "patient is doing well and will

continue conservative treatment."  AR 515.  Finally, he opined "[a]t this point, it is my opinion

that the patient is disabled because of diagnosis of cervical and lumbar radiculopathy because of

disc herniation in cervical and lumbosacral spine ... The patient should be eligible for disability."

AR 516.  Dr. Kuang added, "I will refer the patient to San Luis Sports Physical Therapy group to

do functional capacity evaluation questionnaire, which will take two to three hours to do."  AR

515.  There is no evidence in the record, however, that Plaintiff underwent an RFC evaluation at

the San Luis Sports Physical Therapy Group.

Instead, shortly thereafter, on August 31. 2010, Dr. Kuang himself completed an RFC

Questionnaire regarding Plaintiff.  AR 558.  In the RFC Questionnaire, Dr. Kuang noted that he

had treated Plaintiff since May 2007; diagnosed Plaintiff with "lumbar disc bulging" and "lumbar

stenosis;" described Plaintiff's condition as "chronic and permanent;" opined that Plaintiff was in constant, severe pain, rating between 8 and 10 on the pain scale; and stated that the Fentanyl patch, Dilaudid, Percocet and Methadone did not relieve Plaintiff's pain, while Norco, Ibuprofen, and Soma were helpful.  AR 558.  As for objective signs of Plaintiff's impairments, Dr. Kuang noted an "MRI showing degenerative disc disease C4-5, C5-6, C3-4;" an "MRI showing disc bulging at L5-S1 and L4-5;" and an "MRI showing foraminal stenosis L5-S1 and L4-5."  AR 558.  Dr. Kuang's opined that Plaintiff could not work full-time.  His specific functional capacity findings will be discussed in more detail below.

### (c)    *Consultative Examination by Dr. Dean Chiang*

Consultative Examiner Dr. Dean Chiang examined Plaintiff on October 26, 2008 in San Luis Obispo, California.  AR 269.  He also reviewed unspecified medical records concerning Plaintiff.  AR 269.  Dr. Chiang noted that Plaintiff underwent six epidurals at Standford and three to four additional epidurals during his treatment with Dr. Kuang.  AR 269.  He further noted that Plaintiff has had a discogram, a myelogram, an MRI of his back, multiple physical therapy sessions, and chiropractic manipulation.  AR 269.  Finally, Dr. Chiang noted that "[s]urgery was recommended eventually" but Plaintiff did not undergo surgery because he did not have any insurance coverage.[4]  AR 269.

Dr. Chiang diagnosed Plaintiff with "[c]hronic low back pain with radiculopathy."  AR 271.  In his "Functional Assessment," Dr. Chiang noted as follows:

> The claimant will be expected to stand and walk for approximately four hours in an eight-hour day.  This limitation is due to the back pain with radiculopathy.  He can sit for six hours in an eight-hour day with appropriate breaks given every hour.  He does not need any assistive device for ambulation.  He should lift and carry twenty pounds occasionally and ten pounds frequently.  He should not perform any bending, kneeling, crouching, crawling, or squatting.  There are no manipulative limitations.  There are no relevant visual, communicative or workplace environmental limitations.

AR 271-272.

---

[4]This point is not independently reflected in the record; it also conflicts with Plaintiff's hearing testimony. AR 35.

**(d)**    *Review by State Agency Medical Consultant Dr. P. Kammen*

State Agency Medical Consultant Dr. P. Kammen reviewed Plaintiff's medical records and the report prepared by Consultative Examiner Dr. Dean Chiang.  Dr. Kammen prepared a "Case Analysis" report on November 21, 2008.  In this report, Dr. Kammen noted that Plaintiff's allegations were "partially credible," as they were "not fully supported by objective findings."  AR 280.  Dr. Kammen summarized his findings as follows:

> [C]laimant is a 44 yo who has a prior denial earlier this year for the same allegations.  The MER reflects the long hx of back pain with only minimal findings on MRI.  He has been treated with multiple modalities without change although a diagnostic lumbar discogram revealed radio-fissure at the level of the L4-5 disc.  IDET procedure was recommended but not covered by insurance.  Surgery has been discussed.  Throughout the record repeated exams are fairly consistent without focal neuro deficits.  Mobility of the back is limited with spasm.  At the recent CE the claimant moved around the exam room without difficulty.  He was not using an assistive device.  Mobility of the back was limited.  The CE states that the motor exam of the RLE was 4/5 but the specific site of weakness is not clarified.  The reflexes are equal and the SLR is not documented.  On the exertional activity questionnaire the claimant states he can drive, shop, and care for his young 2 yo child whom he occasionally lifts and carries.  He does some yard work although with disruption.  The CE recommends a modified light RFC with S/W 4hrs day which would seem appropriate given the medical evidence as noted.  I would also recommend that the claimant be allowed to change positions as needed hourly.  This is consistent with the MSS provided by Dr. Kuang (treating physician) on 9/23/08.

AR 280.

Dr. Kammen also prepared an RFC Assessment for Plaintiff on November 21, 2008.  AR 274-278.  Regarding "Exertional Limitations," Dr. Kammen found that Plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; stand and/or walk (with normal breaks) for a total of at least two hours in an eight hour workday; sit (with normal breaks) for a total of at least six hours in an eight hour workday; but that Plaintiff must periodically alternate sitting and standing to relieve pain and discomfort.  AR 275.  Dr. Kammen specifically clarified that standing/walking was limited to four hours per day, and that Plaintiff may require a brief change in position hourly.  AR 275.

Regarding "Postural Limitations," Dr. Kammen found that Plaintiff could occasionally

10

climb ramps, stairs, ladders, etc., stoop, kneel, crouch and crawl.  He found that Plaintiff could never do a balancing action.  Dr. Kammen noted that Plaintiff had no manipulative, visual, or communicative limitations.  As to "Environmental Limitations," Dr. Kammen noted that Plaintiff should avoid concentrated exposure to hazards such as machinery, heights, and uneven terrain.

(e)    *Review by State Agency Reviewing Physician Dr. Lavanya Bobba*

On March 24, 2009, Dr. Lavanya Bobba noted in a "Case Analysis" report regarding Plaintiff's case, that she had "reviewed all the evidence in file" and that Dr. Kammen's "assessment of 11/21/08–is affirmed as written."  AR 334.

**2.     The Disability Determination Standard and Process**

To qualify for benefits under the Social Security Act, Plaintiff must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the  decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)-(f).  The ALJ proceeds step by step in order, and stops upon reaching a dispositive finding that the claimant is disabled or not disabled.  20 C.F.R. §§ 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 416.927, 416.929.

The ALJ is required to determine (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-

1  determinable "severe" impairments;[5] (3) whether these impairments meet or are medically

2  equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1;

3  (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past

4  relevant work;[6] and (5) whether the claimant had the ability to perform other jobs existing in

5  significant numbers at the regional and national level.  20 C.F.R. §§ 404.1520(a)-(f).

6  **3.    Summary of the ALJ's Findings and Decision**

7  Pursuant to the above process, the ALJ determined that Plaintiff did not meet the

8  disability standard.  AR 15-24.  More particularly, the ALJ found that Plaintiff had not engaged in

9  substantial gainful activity since January 24, 2008, the alleged onset date.  AR 17.  Further, the

10  ALJ identified lumbar and cervical disc disease with chronic pain as severe impairments.  AR 18.

11  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or

12  exceed any of the listed impairments.  AR 20.

13  Based on a review of the entire record, the ALJ determined that Plaintiff has the residual

14  functional capacity ("RFC") to perform sedentary work.  Specifically, the ALJ found that

15  Plaintiff could lift up to ten pounds occasionally and five pounds frequently, could sit for six

16  hours in an eight-hour workday, could stand/walk for two hours in an eight-hour workday, with

17  occasional bending and stooping.  AR 22.  Plaintiff, however "could not work around hazards,

18  such as machinery and heights."  AR 22.  After applying the Medical-Vocational Rules, 20 CFR

19  Part 404, Subpart P, Appendix 2 ("the grids"), the ALJ determined that there are a significant

20  number of jobs in the national economy that the claimant can perform and that Plaintiff is not

21  disabled or entitled to benefits.  AR 23-24.

22  The Plaintiff argues that the ALJ improperly evaluated the medical record by erroneously

23  _____

24  [5]"Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. 404.1520(c).

25
26  [6]Residual functional capacity captures what a claimant "can still do despite [his] limitations."  20 C.F.R. § 404.1545.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2
27  (9th Cir. 2007).

28  12

rejecting treating physician Dr. Kuang's opinion.  Plaintiff further argues that the ALJ's finding that Plaintiff could perform sedentary work was improper, because it is inconsistent with Dr. Kuang's ongoing restriction on repetitive head and neck movements.

## STANDARD OF REVIEW

Judicial review of disability claims under the Social Security Act, following a decision by the Commissioner to deny benefits, is limited in scope.  The Commissioner's decision must be affirmed if it applies the correct legal standards and is supported by substantial evidence.  42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).

Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.

## DISCUSSION

### 1.      The ALJ Properly Discounted Dr. Kuang's RFC Questionnaire

Plaintiff argues that the ALJ improperly rejected treating physician Dr. Kuang's August 31, 2010 functional capacity questionnaire ("RFC Questionnaire").  AR. 558-562; Plaintiff's Opening Br., Doc. 12, pp. 8-16.  The Commissioner responds that the ALJ properly rejected Dr. Kuang's RFC Questionnaire because it was inconsistent with substantial evidence in the record, it contradicted Dr. Kuang's own progress notes, and it contradicted the medical opinions of consultative examiner Dr. Chiang, state agency consultant Dr. Kammen, and state agency reviewing physician Dr. Bobba.  Commissioner's Br., Doc. 16, p. 17.

#### (a)      *Applicable Law*

The opinions of treating physicians, examining physicians (who examine but do not treat the claimant) and non-examining physicians (who neither examine nor treat the claimant) are entitled to varying weight in disability determinations.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight.  *Id.*  An

1   examining physician's opinion is, in turn, given more weight than the opinion of a non-examining

2   physician.  20 C.F.R. § 404.1527(d)(2); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

3   *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).

4        A treating physician's opinion is not binding on an ALJ in determining the existence of

5   an impairment or the ultimate issue of disability.  20 C.F.R. § 404.1527(d)(2); *Magallanes v.*

6   *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Where the treating physician's opinion is not

7   contradicted by another doctor, the ALJ may dismiss it only for only for "clear and convincing

8   reasons."  *Magallanes*, 881 F.2d at 751; *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

9   If the treating doctor's opinion is contradicted by another doctor, the ALJ must give "specific and

10   legitimate" reasons, supported by substantial evidence in the record, for discounting it.[7]  *Lester*,

11   81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002); *Murray v.*

12   *Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  In reducing the weight normally accorded to the

13   opinion of a treating physician, the ALJ may rely on the contradictory opinion of an examining

14   physician, as well as, in part, but not solely, on the contradictory opinion of a non-examining

15   physician.[5]  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.

16        **(b)**     ***Analysis***

17        In the August 31, 2010 RFC Questionnaire at issue in this case, Dr. Kuang opined that

18   Plaintiff's pain was severe enough to constantly interfere with attention and concentration needed

19   to perform even simple work tasks.  He opined that Plaintiff was incapable of even "low stress"

---

[7]Similarly, the uncontradicted opinion of an examining physician may be rejected only for "clear and convincing" reasons, *Pitzer*, 908 F.2d at 506, and, if it is contradicted by another doctor, it can be rejected only on the basis of specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

[5]An ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.  *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  In *Magallanes*, the Ninth Circuit explained that "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians."  *Magallanes*, 881 F.2d at 752.  Rather, the ALJ also relied on laboratory test results, reports from examining physicians, as well as the claimant's own testimony.  *Id*. at 751-52.

1  jobs, could sit or stand for only five minutes at a time, and could not walk even one city block

2  without rest or severe pain.  AR 559-560.  Dr. Kuang opined that Plaintiff could sit, stand and

3  walk for a total of less than two hours each in an eight-hour workday.  AR 560.  Plaintiff would

4  also need to shift positions from sitting, standing or walking, and would need unscheduled breaks

5  averaging thirty minutes in length, with varying frequency, during an eight-hour workday.  AR

6  560.  Plaintiff would need to lie down during these breaks.  AR 560.  Plaintiff did not need a

7  cane or assistive device for walking.  AR 560.  Plaintiff could occasionally lift less than ten

8  pounds, rarely lift ten pounds, and could not lift over twenty pounds.  AR 560.  He opined that

9  Plaintiff had good and bad days and would be absent from work for over four days per month.

10  AR 561.  Finally, Dr. Kuang opined that Plaintiff could not work full-time.  AR 562.

11       In evaluating Dr. Kuang's opinion, the ALJ noted that "[t]he August 2010 functional

12  assessment from Dr. Kuang conflicts with the weight of the medical evidence and [Plaintiff's

13  other] functional assessments and was given minimal weight."  AR 22.  As part of this analysis,

14  the ALJ gave a detailed summary of the medical records, and as discussed in more detail below,

15  provided specific and legitimate reasons for discounting Dr. Kuang's RFC findings.

16       First, the ALJ took note of the contradictory RFC assessments of consultative-examining

17  physician Dr. Chiang and non-examining state agency physician Dr. Kammen.  AR 22.  Drs.

18  Chiang and Kammen both found that Plaintiff's RFC was limited by his back condition, but that

19  he could work an eight-hour day.  Specifically, Dr. Chiang found that Plaintiff was capable of

20  sitting for six hours with appropriate hourly breaks and standing/walking for four hours.  AR

21  271-272.  Dr. Kammen opined that Plaintiff was capable of sitting for six hours with normal

22  breaks and standing/walking for at least two hours.[6]  AR 275.  Both these doctors found Plaintiff

23  to be far less functionally restricted than Dr. Kuang did.[7]  AR 19, 22.

24  _____

25       [6]Dr. Kammen clarified that standing/walking was limited to four hours per day.  AR 275.

26       [7]The ALJ did not adopt all the findings in Dr. Chiang's RFC Assessment of October 26, 2013, but he relied

27  on parts of it that directly contradicted Dr. Kuang's RFC Questionnaire.  *See Magallanes v. Bowen*, 881 F.2d at
   753-754 (an ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the

28                                                    15

1   In addition, the ALJ discounted Dr. Kuang's RFC findings on account of contradictory

2   evidence, based on objective data, in Dr. Kuang's own treatment notes from prior examinations.

3   AR 18-19.  For example, Dr. Kuang's treatment notes from prior visits consistently restrict the

4   Plaintiff only from heavy lifting and repetitive movements of the head and neck based on the

5   objective medical evidence.  AR 19.  The ALJ noted that in further restricting the claimant in the

6   August 2010 Questionnaire, Dr. Kuang did not cite any new medical evidence.  AR 19.  The ALJ

7   thus concluded "that the prior preclusion from heavy lifting and repetitive movements of the

8   head and neck was more consistent with the medical evidence."  AR 19.  *See Roberts v.*

9   *Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional

10   assessment was appropriate when it conflicted with the doctor's own written report and test

11   results).

12          Plaintiff asserts that Dr. Kuang's repeated notations that Plaintiff should avoid only heavy

13   lifting and repetitive movements of the head and neck were "behavior modifications," and as

14   such, were not work restrictions as the ALJ alleges.  Doc. 12, p. 14.  However, this is only

15   Plaintiff's interpretation of the record.  Dr. Kuang does not specify that the behavior modification

16   restrictions are not related to and not indicative of functional restrictions.   There is clearly an

17   "incongruity" between Dr. Kuang's  RFC Questionnaire, which states that Plaintiff can barely sit,

18   stand, or walk and must lie down frequently, and his treatment notes for much of the treatment

19   period, which reflect restrictions only on heavy lifting and repetitive movements of the head and

20   neck.  AR 260, 268, 522, 528, 515-516.  *See Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

21   2008) (treating physician's opinion may be rejected on the basis of incongruity between the

22   doctor's assessment and his own medical records).  Moreover, the ALJ also noted that the most

23   recent treatment record from Dr. Kuang states that Plaintiff was doing well and will continue

24   with conservative treatment.  AR 18, 515.

25   

26   physician's opinions).  Plaintiff's argument that the ALJ implicitly rejected Dr. Chiang's entire opinion because he
     dismissed the finding of no bending and stooping without comment is without merit.  *See* Plaintiff's Open. Br., Doc.

27   12, p. 15; Plaintiff's Rep. Br., Doc. 17, p. 5.

28                                                  16

In according reduced weight to Dr. Kuang's RFC Questionnaire, the ALJ further relied on contradictory evidence in treatment notes from other treating sources. AR 19-20. For example, the ALJ cited the records of Plaintiff's primary physician, Dr. Miriam Lomelino:

> In a March 11, 2008 report, Dr. Miriam Lomelino concluded the claimant could return to his past heavy work by April 2008 [AR 390]. In her March 26, 2008 report, Dr. M. Lomelino stated the claimant had lumbar pain, but there were no neurological deficits. Sensation, reflexes, and motor strength were intact [AR 391-393]. The claimant had full range of motion and muscle strength. Dr. M. Lomelino did not assess any functional limitations . . . She gave the claimant a few short temporary periods of disability in these records, but she did not find the claimant permanently disabled.

AR 20. The ALJ also cited Plaintiffs records from, *inter alia*, Stanford University Medical Center (Plaintiff was advised against heavy lifting); Twin Cities Community Hospital (x-rays of the lumbar spine were negative; claimant was treated symptomatically with pain relief medications); and Community Health Centers (conservative care for complaints of back and neck pain and numerous reports that the claimant requested help completing disability paperwork; no functional limitations imposed on claimant). *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003) (a medical opinion may be rejected where it is "unsupported by the record as a whole").

Finally, the ALJ noted that the severity of the functional restrictions in the Questionnaire was "not warranted by the clinical evidence." AR 18, 22. Plaintiff argues that this is not a specific reason but rather a conclusion. However, the ALJ provided a detailed analysis of the inconsistent clinical findings. AR 22. *See Buckner-Larkin v. Astrue*, 2011 WL 4361652, 628 (9th Cir. Sept. 20, 2011) (ALJ properly discounted treating physician's opinion where it was inconsistent with other medical evidence and opinions). Among other inconsistent clinical findings, the ALJ noted that "[t]he orthopedic and neurological findings were minor throughout the record. The claimant was generally found to have good range of motion, normal muscle strength, an intact sensation and reflexes. The claimant was treated conservatively with pain relief medications, lumbar and cervical epidural injections, and physical therapy. Surgery has not

1  been advised."[9]  AR 22.

2      Here, the ALJ applied the correct legal standards in rejecting Dr. Kuang's RFC

3  Questionnaire and he gave specific and legitimate reasons support of his conclusions.  These

4  findings are supported by substantial evidence in the record as a whole.  Therefore, the ALJ

5  properly rejected Dr. Kuang's opinion.

6      **2.**    **The ALJ Properly Found that Plaintiff had the RFC to
        Perform Sedentary Work**

7      Plaintiff further argues that the ALJ's finding that Plaintiff could perform sedentary work

8  was improper because it was inconsistent with treating physician Dr. Kuang's ongoing

9  restriction, as reflected in numerous treatment notes, on repetitive head and neck movements.

10  Plaintiff points out that in discounting Dr. Kuang's RFC findings, the ALJ relied, in part, on the

11  fact that Dr. Kuang imposed this "behavior modification" restriction.  In reply, the Commissioner

12  argues that the ALJ's RFC finding is supported by substantial evidence in the record.  *Id.*

13      As a preliminary matter, the Court notes that Plaintiff has not adequately developed this

14  argument in his briefing.  Plaintiff has only provided limited legal authorities and analysis to

15  support his argument.  *See, e.g., Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161

16  (9th Cir. 2008) (courts need not address arguments that are not briefed with specificity).  Second,

17  the ALJ restricted Plaintiff to sedentary work on the basis of "the weight of the medical evidence

18  and the functional capacity assessments of record."  AR 22.  As discussed above, based on

19  inconsistencies between Dr. Kuang's treatment notes and his RFC Questionnaire, the ALJ

20  discounted Dr. Kuang's findings.  In light of the functional capacity assessments of Drs. Chiang,

21  Kammen and Bobba, and the other medical record evidence discussed above, this Court finds

22  that the ALJ properly restricted Plaintiff to sedentary work.  Accordingly, the ALJ's finding is

23  AFFIRMED.

24  ///

25

26      [9]  In his assessment, Dr. Chiang noted that surgery was eventually recommended but provided no details.
27  This fact is not independently reflected in the record.

28                          18

**CONCLUSION**

The Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence in the record as a whole.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, Commissioner of Social Security and against Plaintiff Thomas Strong.


IT IS SO ORDERED.

**Dated:**   July 1, 2013                    /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE

19